498 A.2d 811

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Timothy FORREST, Appellee.**

Supreme Court of Pennsylvania.

Submitted April 17, 1985.

Decided Sept. 25, 1985.

6. *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984).

Gaele McLaughlin Barthold, Chief, Prosecution Apls., Eric B. Henson, Deputy Dist. Atty., Garold E. Tennis, Asst. District Atty., Philadelphia, for appellant.

Robert J. Leibowitz, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

The Commonwealth appeals by allowance an order of Superior Court, 327 Pa.Super. 593, 474 A.2d 671 remanding this case to the Philadelphia Court of Common Pleas for an evidentiary hearing on two issues raised by direct appeal from sentence imposed on appellee, Timothy Forrest. A jury found appellee guilty of two counts of aggravated assault, two counts of robbery, kidnapping by force, threat or deception and unauthorized use of a vehicle. Common Pleas sentenced him to nineteen to forty-one years imprisonment. On the appointment of new counsel, appellee raised claims that his court appointed trial counsel was ineffective[1] for inadequately pursuing his Rule 1100 issues. The Commonwealth has sought our review claiming that Superior Court misconstrued our holding in *Commonwealth v. Crowley*, 502 Pa. 393, 466 A.2d 1009 (1983) and has, thus, improperly imposed on the prosecution a burden to prove due diligence when a defendant reaches that issue through a claim of trial counsel's ineffectiveness.[2]

The charges against appellee arose out of an incident on June 25–26, 1977, during which appellee and a companion approached and forced their way at gunpoint into a van as it was being started by its owner. On taking control of the van, the men robbed the owner and his female companion. The van owner was pistol-whipped and the woman was raped by both assailants. She was then shot in the head at point-blank range. The woman survived, although she was severely and permanently maimed and a bullet remained

---

1. *See* Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–1 *et seq.*, *Commonwealth v. Crowley*, 502 Pa. 393, 466 A.2d 1009 (1983), *Commonwealth v. Taggart*, 258 Pa.Superior Ct. 210, 393 A.2d 758 (1978) (where a defendant is represented by new counsel on appeal, an allegation of ineffective assistance of trial counsel must be raised on direct appeal; failure to do so bars defendant from raising this issue in subsequent post conviction hearing proceeding).

2. It should be noted that appellee's constitutional right to a speedy trial is not implicated in this case. The issues presented involve only the requirements of Pa.R.Crim.P. 1100.

lodged in her spine. Notes of Testimony, October 27, 1981, pp. 102–106.

A complaint was filed against appellee on June 30, 1977. Despite the dogged efforts shown on the record, Notes of Testimony, August 25, 1981, pp. 4–23, the Philadelphia police were unable to locate appellee until July of 1980, when they were advised by the Cape May, New Jersey, police that appellee was incarcerated there on charges unrelated, but similar in nature, to the charges lodged against him in Philadelphia. Appellee was returned to Philadelphia from Cape May on April 1, 1981, in the custody of the Philadelphia police. A preliminary hearing was held on May 14, 1981.

On May 19, 1981, the District Attorney filed a petition for a rule on appellee to show cause why an order extending the time for trial under Pa.R.Crim.P. 1100 should not be granted. This petition alleged: (a) the date the complaint against appellee was filed, June 30, 1977; (b) an unextended run date of December 27, 1977, 180 days from June 30, 1977, and (c) the Commonwealth's inability to proceed to trial by December 27, 1977, because of appellee's unavailability during the entire time the arrest warrant was outstanding. The prosecution requested an extension of the period for commencement of trial to September 28, 1981, *i.e.* 180 days from appellee's return to Philadelphia on April 1, 1981.

Appellee, in turn, filed a "Motion to Quash Return of Transcript Nunc Pro Tunc" on May 29, 1981. On June 12, 1981, the Public Defender asked to withdraw and the court ordered appointment of private counsel. Appellee was still represented by the Public Defender at conference on July 16, 1981, when a joint continuance was requested and entered until August 5, 1981. The Commonwealth then requested a continuance to August 20, 1981, and then extended it to August 25, 1981 because of the unavailability of a detective witness who had been injured. On that date a hearing on the Commonwealth's request for a Pa.R. Crim.P. 1100 extension and on appellee's Motion to Quash

was held; the Commonwealth's petition to extend was granted and appellee's Motion to Quash was granted only on the charge of indecent assault.[3]

At the hearing appellee's counsel moved to dismiss the Commonwealth's request for an extension of time beyond December 27, 1977, and further requested the exclusion of the periods April 1 to May 19 and August 5 to August 25 from any extension granted to the Commonwealth. Notes of Testimony, August 25, 1981, pp. 26–29. Petitioner, through trial counsel, contended that the 180 days had run before appellee was apprehended because of the Commonwealth's lack of due diligence in locating him and returning him to Philadelphia, rather than his unavailability in New Jersey. Counsel vigorously examined the police efforts to locate appellee between June 30, 1977, the date of the complaint, and July 22, 1980, when he was located in New Jersey.

In denying appellee's motion to dismiss, Common Pleas noted with particular emphasis the persistent efforts made by the police to locate appellee prior to their receiving a report of his arrest in Cape May. *Id.* at 29. Calculating from April 1, 1981, the run-date for starting appellee's trial would have been September 28, 1981. In response to the Commonwealth's request, the court proposed a thirty day extension because defense counsel indicated that appellee had not yet made a choice between a jury or bench trial. Appellee's counsel then stated: "I would request an extended date in October, as far as possible." *Id.* at 29. After finding the first available jury date to be October 26th, the court granted an extension to November 26, 1981.

■ Appellee's new counsel now challenges trial counsel's effectiveness in not pursuing an argument based on a lack of diligence on the part of the District Attorney's Office for the period July 23, 1980 to April 1, 1981. The transcript on

3. The victim, traumatized by the incident and her injuries, was unable to recall many details, which presumably accounts for the quashing of the indecent assault charge.

this issue is short. After noting an off-the-record discussion, the following remarks were transcribed:

[ASSISTANT DISTRICT ATTORNEY]: We can avoid [the detective's] testifying altogether if counsel will agree that he was informed in July of 1980 this defendant had been arrested in Cape May and that after his case was disposed of there and in that case after he served whatever sentence he served there, he then waived extradition, was taken to Philadelphia and gave the statement which has already been presented to the Court.

THE COURT: There is no issue of proper extradition, issue of diligence in finding him before he got arrested in New Jersey?

[ASSISTANT DISTRICT ATTORNEY]: That's correct. Can we agree to that?

[DEFENSE COUNSEL]: Yes.

Notes of Testimony, August 25, 1981, pp. 19–20. Thus, after nineteen pages of examination and cross-examination setting forth the Commonwealth's efforts to find and apprehend appellee, his counsel agreed that there were no issues of proper extradition or due diligence. He, nevertheless, attempted to preserve his motion to dismiss for the record on appeal. Notes of Testimony, August 25, 1981, p. 26.

Our standard for reviewing the effectiveness of counsel was set forth in 1967 in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). We noted that such a review "encompasses both an independent review of the record, see *Commonwealth ex rel. Sprangle v. Maroney*, 423 Pa. 589, 225 A.2d 236 (1967), and an examination of counsel's stewardship of the ... challenged proceedings in light of the available alternatives." Here appellee's counsel patiently and persistently probed and questioned the Commonwealth's efforts to apprehend his client and bring him to trial, until the court's patience showed signs of reasonable wear. At that point, the Assistant District Attorney suggested that the witness' additional testimony could be avoided if defense counsel

would agree to the contents of the proffered evidence. By similar agreement the Assistant District Attorney summarized the testimony to be offered by yet another detective witness. Notes of Testimony, August 25, 1981, p. 25. Thus the record does not contradict the Commonwealth's diligence in securing appellee's return to Pennsylvania after he was discovered in New Jersey and defense counsel was thereby prompted to make the concession noted in the record above. That record further discloses that appellee's counsel was given access to the entire file in the District Attorney's Office before the August 25, 1981 hearing. Notes of Testimony, August 25, 1981, p. 30.

Although not offered into evidence at that hearing, the Common Pleas opinion in support of the extension of time summarizes the information which was to be found in that file, detailing the Commonwealth's correspondence aimed at bringing appellee back to Pennsylvania for trial and appellee's unavailability for extradition from New Jersey until after the disposition of the charges against him there. Common Pleas Slip Op., filed December 27, 1983, at 2–4. Appellee was ultimately sentenced on his New Jersey charges on March 1, 1981. The Philadelphia District Attorney's Office sent a Request for Custody under the Interstate Agreement on Detainer's Act, 42 Pa.C.S. §§ 9101–9108, to the Warden of the Cape May County Jail on March 4, 1981. On March 30th the Cape May authorities advised Philadelphia that appellee's sentence would expire the following day. On April 1, 1981, the Philadelphia authorities took him into custody. Thus the findings of the Common Pleas judge who presided at the Rule 1100 hearing are consistent with trial counsel's strategy in contesting the District Attorney's motion for extension of time and they explain why counsel agreed that the detective who had knowledge of the facts did not need to testify. Trial counsel's decision not to challenge the efforts to return appellee was a judgment reasonably calculated to aid his client and was also in accord with the demands of profes-

sional conduct. As Justice Roberts (later Chief Justice Roberts) so aptly said in *Washington v. Maroney, supra:*

> We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weight the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

*Id.,* 427 Pa. at 604–605, 235 A.2d at 352–353 (emphasis in original) (footnote omitted). *See also Commonwealth v. Roach,* 479 Pa. 528, 530–531, 388 A.2d 1056, 1057 (1978): "It is reasonable for counsel to decline to file motions or enter objections which are without merit, ... reasonably certain to fail, ... or unsupported by law existing at the time of proceedings." (Citations omitted). *Commonwealth v. Crowley, supra,* is no more than a recognition of this principle.

The findings of Common Pleas also explain why appellee's new counsel has failed to set forth the manner in which a different strategy by trial counsel would have benefited appellee and why appellate counsel has himself failed to produce evidence of the Commonwealth's lack of due diligence between July of 1980 and April of 1981.

Superior Court is correct in holding that the Commonwealth carries the initial burden of proving that it has met the due diligence requirements of Rule 1100. This Court has regularly required that it do so. *Commonwealth v. Ehredt,* 485 Pa. 191, 401 A.2d 358 (1979); *Commonwealth v. Wade,* 475 Pa. 399, 380 A.2d 782 (1977); *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977). However, once a lower court has found for the Commonwealth on the

issue of due diligence, the party who attempts to reopen that issue by alleging his counsel's ineffectiveness must make at least an initial allegation and produce some facts to show how a different course of action by his prior counsel would better have served his interest. *Commonwealth v. McKenna*, 498 Pa. 416, 446 A.2d 1274 (1982); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981) (counsel who is alleging ineffectiveness must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective); *Commonwealth v. Robinson*, 492 Pa. 12, 421 A.2d 1066 (1980) (failure to make a fruitless objection is not ineffectiveness of counsel). To permit appellee's new counsel to put the Commonwealth to proof of due diligence on the record in this case would stigmatize his trial counsel for acting in accordance with required standards of the profession by refusing to pursue objections which have no merit.

At this stage of the proceedings, hindsight might show the Philadelphia District Attorney's Office the wisdom of having put its extradition correspondence and documents on the record at the hearing on August 25, 1981. We cannot see, however, how appellee would have benefited by a detailed presentation of the correspondence concerning his detention, trial and sentence. Aware of the efforts by the Philadelphia authorities, defense counsel made a reasonable choice in litigating only the diligence of the police prior to his client's arrest in New Jersey. Counsel could reasonably have concluded that under the evidence then available further interrogation and examination would simply have enhanced the Commonwealth's case and understandably exasperated the judge without any benefit to his client.

In sum, we agree with the statement made by Judge Klein, Slip Op., *supra*, at 5, "It is taught that a lawyer should not dilute a reasonable argument by adding a frivolous claim. There could have only been one reason to claim a lack of diligence after the defendant was located in

New Jersey. That would be for the attorney to protect himself against a future claim of ineffectiveness. The trial counsel better adhered to his responsibility to the Court."

█ It is evident from our discussion of the ineffectiveness issue that appellee's claim that he was denied a speedy trial under the terms of Pa.R.Crim.P. 1100 must also fail.[4] This record read in accordance with the legal principles set forth in the above cases shows appellee was unavailable from July 23, 1980 to April 1, 1981, because of a delay in his return by the responding jurisdiction, New Jersey. As Judge Klein has noted in his opinion:

The Uniform Criminal Extradition Act,[5] which has been adopted by Pennsylvania, does not require the return of a prisoner on demand. It allows the respective executive authorities of the two states concerned to agree that such person may be returned under certain conditions. 42

---

**4.** In 1977–1981, the relevant parts of this rule provided:
(c) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced.
(d) *In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:*
    (1) *the unavailability of the defendant* or his attorney;
Pa.R.Crim.P. 1100(c) and (d) (emphasis added). To this subsection the following Comments were appended:
For purposes of subparagraph (d)(1), in addition to any other circumstances precluding the availability of the defendant or his attorney, the defendant should be deemed unavailable for any period of time during which he could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; ... *or a responding jurisdiction delayed* or refused to grant *extradition....*
*Id.* (emphasis added). *See also Commonwealth v. Williams,* 284 Pa. Superior Ct. 125, 425 A.2d 451 (1981).

**5.** 42 Pa.C.S. §§ 9121–9148.

Pa.C.S.A. § 9126(a); *Commonwealth v. Williams*, 284 Pa.Super. 125, 425 A.2d 451, 455 (1981). Extradition under the Act is the appropriate procedure under which to initiate a prisoner's return to Pennsylvania prior to sentencing. *Commonwealth v. Alexander*, Pa.Super., 464 Pa.2d 1376 (1983). The Interstate Agreement on Detainers Act applies only to sentenced prisoners, 42 Pa.C.S.A. § 9101; *Commonwealth v. Williams, supra,* 284 Pa.Super. at 131.

Slip Op., *supra* at 3. Judge Klein, the fact finder at the hearing on the Commonwealth's Petition for extension of time, has given us the specific actions and correspondence which were available in support of his grant of the Commonwealth's petition for extension.

It would be a pointless exercise for us now to require an additional evidentiary hearing to re-establish that the Commonwealth had: (a) promptly served a copy of the warrant for Timothy Forrest on New Jersey authorities as a detainer, (b) been informed by telephone and letter that appellee was awaiting trial in New Jersey and was unavailable for extradition, (c) inquired about the progress of the New Jersey case at monthly intervals, (d) been informed that appellee had pleaded guilty to the New Jersey charges and that he was to be sentenced on March 1, 1981, and would be available for trial in Pennsylvania thereafter, (e) promptly sent the appropriate Request for Custody on March 4, 1981, and (f) dispatched Philadelphia Police Detectives to take custody of appellee on April 1, 1981, the day after his New Jersey sentence expired. Common Pleas Slip Op., *supra* at 3–4.

The order of Superior Court is reversed. Judgment of the Philadelphia Court of Common Pleas is affirmed.

NIX, C.J., concurs in the result.

ZAPPALA, J., concurs in the result.