J-S17044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT L. HOWARD | |
| Appellant | No. 1951 WDA 2014 |

Appeal from the PCRA Order November 24, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008242-2006

BEFORE:  GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED APRIL 08, 2015**

Appellant, Robert L. Howard, appeals from the order entered in the Allegheny County Court of Common Pleas, denying his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows.

> Appellant was arrested in connection with two separate robberies which occurred in the North Hills suburbs of the city of Pittsburgh.  At trial, the Commonwealth presented evidence through the testimony of both victims.  The first victim to testify…could not be certain as to the identity of the perpetrator.  Appellant made a motion for judgment of acquittal, and the trial court granted the motion.
>
> With regard to the remaining case, the Commonwealth presented the testimony of Melisa Lynn Hankins ["Victim"].

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*Former Justice specially assigned to the Superior Court.

[Victim] testified that on December 22, 2005, she arrived at the Parkvale Bank at approximately 8:20 p.m. [Victim] parked her orange 2006 Cobalt diagonally two spaces to the left of the ATM machine. In the space to her right, nearest to the ATM, was another car. At the time, an African American man wearing jeans and a zip up hoodie was at the ATM; this person was later identified as [A]ppellant. Due to the cold weather, the victim remained in her vehicle and prepared to use the ATM.

During the two minutes [Victim] observed [A]ppellant at the ATM, she noted that he appeared flustered. [Victim] testified that [A]ppellant did not seem to be able to withdraw money and he continued to look around and made direct eye contact with her before returning to his car. [Victim] got out of her car, approached the ATM, and noticed it said, "insufficient funds, please try another account." She then waited approximately 30 seconds for the homepage of the machine to appear and successfully withdrew $200.00, consisting of $20.00 bills, from her account. [Victim] then put the money and her card in her back pocket and took her receipt.

After unlocking the door to her vehicle, she removed the money from her pocket and put it into a cup holder. [Victim] explained that her left leg was hanging out of the vehicle, and as she was getting ready to close the door, [A]ppellant grabbed her left arm with his left hand. [Victim] stated that [A]ppellant was so close she could smell his breath when he told her that he had a gun, holding his hand in his right pocket. [Victim] replied, "[T]his doesn't really need to be going on. We'll let it go. Nothing will be done about it. We'll just let it go. It's the holidays." Appellant continued to push at his pocket as if there was something inside.

[Victim] looked at [A]ppellant's face and noticed he was off balance. She tried pushing him to get back into the car. In response, [A]ppellant pushed [Victim] into the car. [Victim] then hit her head off the side of the door as [A]ppellant came into the car and tried to take the money out of her hand. As [Victim] resisted, [A]ppellant took the ATM card out of her hand, crunched and ripped up the card, and took all of her cash. Appellant then left in his

> vehicle. [Victim] called her father who then called the police. [Victim] identified [A]ppellant in court as the robber.

***Commonwealth v. Howard***, No. 1913 WDA 2010, unpublished memorandum at 1-3 (Pa.Super. filed August 12, 2011) ("***Howard I***") (internal footnote and citations to the record omitted).

On March 8, 2006, the Commonwealth filed a criminal complaint charging Appellant with the robberies. Law enforcement, however, could not immediately apprehend Appellant. In July 2007, the Commonwealth located Appellant at the United States Penitentiary—Canaan ("USP—Canaan"). In a letter dated July 23, 2007, USP—Canaan offered temporary custody of Appellant to the Commonwealth, pursuant to the Interstate Agreement on Detainers ("IAD").[2] The Commonwealth received the letter from USP—Canaan on August 2, 2007. The Commonwealth accepted the offer of temporary custody and agreed to take Appellant to trial "within the time specified in Article III(a) of the [IAD]."[3] (IAD Form VII, filed 8/16/07, at 1).

_____

[2] 42 Pa.C.S.A. §§ 9101-9108.

[3] This Court previously determined:

> [B]ecause the warden of USP—Canaan offered temporary custody to Allegheny County on a request by Appellant, … Article III of the IAD applied and required that trial commence within 180 days of the Commonwealth['s] receipt of notice of Appellant's request. The Commonwealth represented that it received notice of Appellant's request on August 2, 2007…. Therefore,

*(Footnote Continued Next Page)*

The Commonwealth took Appellant into custody in Allegheny County on September 15, 2007.

The court originally scheduled Appellant's case for trial on January 7, 2008. On that date, however, trial counsel requested a continuance on Appellant's behalf. Counsel executed a continuance form, which included the handwritten notation "no discovery[.]" (N.T. PCRA Hearing, 6/16/14, at 7). The court granted the continuance and rescheduled trial for April 17, 2008. On January 25, 2008, Appellant filed a motion for a bill of particulars, seeking to compel additional discovery. Specifically, Appellant requested supplemental police reports, surveillance tapes, video and audio recordings of police interrogations, forensic reports, and the original photo array shown to the victims.

Appellant proceeded to a bench trial on April 17, 2008. Following trial, the court found Appellant guilty of one count of robbery. On June 30, 2008, the court sentenced Appellant to five (5) to ten (10) years' imprisonment. This Court affirmed the judgment of sentence on August 12, 2011, and our

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

absent a continuance granted for "good cause shown in open court," or a determination that Appellant was "unable to stand trial," the Commonwealth had until January 29, 2008, to commence trial.

***Commonwealth v. Howard***, No. 1914 WDA 2012, unpublished memorandum at 12 (Pa.Super. filed July 10, 2013) ("***Howard II***") (internal citations omitted).

Supreme Court denied Appellant's petition for allowance of appeal on January 5, 2012.

Appellant timely filed a counseled PCRA petition on February 24, 2012. In it, Appellant argued trial counsel was ineffective for failing to challenge the timeliness of trial under the IAD and Pa.R.Crim.P. 600. On September 19, 2012, the court issued notice of its intent to dismiss the petition without a hearing, pursuant to Pa.R.Crim.P. 907. The court denied PCRA relief on November 15, 2012. Regarding the continuance of trial from January 7, 2008 to April 17, 2008, the court attributed the entire delay to Appellant.

Appellant timely filed a notice of appeal on December 3, 2012. On appeal, this Court affirmed the order denying PCRA relief in part, concluding the PCRA court properly denied Appellant's claim regarding the filing of a Rule 600 motion. Nevertheless, this Court also vacated the order and remanded for an evidentiary hearing as follows:

> [W]e conclude that the record did not support the conclusion of the PCRA court that there existed no genuine issues of material fact on the question of a "good cause" continuance under the IAD.
>
> Consequently, we remand for further development of the present record for consideration of whether the January 7, 2008 continuance was attributable to Appellant, the Commonwealth, or both. The PCRA court shall develop a record to explain the notation "no discovery" as the cause of the defense's request for a continuance, and whether the rescheduling of trial until April 17, 2008, was beyond the control of the Commonwealth.

*Howard II, supra* at 16-17.

The PCRA court conducted an evidentiary hearing on June 16, 2014. At that time, trial counsel testified that Appellant asked her to request a continuance, because he believed trial counsel could obtain additional discovery. Appellant disputed trial counsel's testimony, claiming trial counsel did not ask Appellant whether he wanted a continuance. Appellant maintained trial counsel did not inform him about the IAD mechanical run date, and Appellant would have not have consented to the continuance if he had known about the IAD mechanical run date. On November 24, 2014, the court again denied PCRA relief. Appellant timely filed a notice of appeal on December 1, 2014. That same day, Appellant filed a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

Appellant raises one issue for our review:

> DID THE [PCRA] COURT ERR IN DENYING APPELLANT'S PCRA PETITION SINCE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE A VIOLATION OF THE [IAD] SINCE APPELLANT'S 4/17/08 TRIAL WAS HELD IN VIOLATION OF THE IAD?

(Appellant's Brief at 3).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those

findings. ***Commonwealth v. Boyd***, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190 (Pa.Super. 2012). "Traditionally, issues of credibility are within the sole domain of the trier of fact [because] it is the trier of fact who had the opportunity to personally observe the demeanor of the witnesses." ***Commonwealth v. Abu-Jamal***, 553 Pa. 485, 527, 720 A.2d 79, 99 (1998), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). "[A]s with any other credibility determination, where the record supports the PCRA court's credibility determinations, those determinations are binding" on this Court. ***Id.***

On appeal, Appellant contends the court had to commence trial on or before January 29, 2008, pursuant to Article III of the IAD. Although the court originally scheduled trial before the IAD mechanical run date, Appellant complains the court postponed trial until April 17, 2008. Appellant argues he did not waive his rights under the IAD by agreeing to a trial date outside the statutory period, and "[t]rial [c]ounsel should not have taken any postponement." (Appellant's Brief at 24). Appellant further argues the court elected to continue trial without conducting a proper hearing to determine the existence of good cause for the delay.

Appellant acknowledges trial counsel's contrary testimony from the PCRA hearing, but Appellant insists that counsel unilaterally sought the

continuance without giving Appellant the opportunity to sign off on the continuance form. Moreover, Appellant insists the delay in trial stemmed from a failure to provide certain discovery; therefore, the delay was attributable to the Commonwealth. Appellant also maintains that trial counsel did not explain Appellant's rights under the IAD, and Appellant would not have authorized a continuance if he had known about the IAD mechanical run date. Appellant concludes trial counsel was ineffective for failing to challenge the timeliness of trial based upon the IAD. We disagree.

The law presumes counsel has rendered effective assistance. *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Williams, supra*.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot

be found ineffective for failing to pursue a baseless or meritless claim."

***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate [her] client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [a defendant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [***Kimball, supra***]*,* we held that a "criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

***Commonwealth v. Chambers***, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

"The IAD is an agreement between forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, that establishes procedures for the transfer of prisoners incarcerated in one jurisdiction to the temporary custody of another jurisdiction which has lodged a detainer against a prisoner." ***Commonwealth v. Jones***, 886 A.2d 689, 695 (Pa.Super. 2005), *appeal denied*, 587 Pa. 686, 897 A.2d 452 (2006) (quoting ***Commonwealth v. McNear***, 852 A.2d 401, 405 n.3 (Pa.Super. 2004)).

Unlike a request for extradition, which is a request that the state in which the prisoner is incarcerated transfer custody to the requesting state, a detainer is merely a means of informing the custodial jurisdiction that there are outstanding charges pending in another jurisdiction and a request to hold the prisoner for the requesting state or notify the requesting state of the prisoner's imminent release.

*Jones, supra* (quoting ***Commonwealth v. Davis***, 567 Pa. 135, 139, 786

A.2d 173, 175 (2001)).

Article III of the IAD sets forth the following transfer procedure:

### § 9101. Agreement on detainers

The Agreement on Detainers is hereby enacted into law and entered into by this Commonwealth with all other jurisdictions legally joining therein in the form substantially as follows:

\* \* \*

### Article III

(a)   Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided, That **for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance**.

\* \* \*

- 10 -

42 Pa.C.S.A. § 9101, Article III (emphasis added).

Additionally, "[T]he IAD may be tolled by the defendant's own actions." *Jones, supra* at 696 (quoting *Commonwealth v. Montione*, 554 Pa. 121, 126, 720 A.2d 738, 741 (1998), *cert. denied*, 526 U.S. 1098, 119 S.Ct. 1575, 143 L.Ed.2d 671 (1999)).

> Significantly, a defendant may waive his rights under the IAD by agreeing to a trial date outside the time periods mandated by the statute. *New York v. Hill*, 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). In *Hill*, both defense counsel and the prosecution agreed on a trial date, which fell outside of the 180-day period mandated by Article III of the IAD. Upon expiration of the 180-day period, and prior to trial, defense counsel moved to dismiss the charges on Article III grounds. The Supreme Court held that the prior agreement to set a trial date beyond the 180-day period waived any subsequent Article III objection. *Id.* at 115, 120 S.Ct. at 664, 145 L.Ed.2d at 567. *Compare Commonwealth v. Mayle*, 780 A.2d 677, 684 n.15 (Pa.Super. 2001) (stating appellant's failure to object to trial date scheduled beyond IAD time limit did not waive subsequent Article III objection, where trial date was not "product of negotiation" between parties).

*Jones, supra* at 696-97 (internal footnote omitted).

Instantly, the PCRA court conducted an evidentiary hearing about the scheduling of Appellant's trial beyond the IAD mechanical run date. Trial counsel, a criminal defense attorney with over twenty years' experience, testified that she was aware of the IAD and its timeliness requirements. Trial counsel also testified that she executed a continuance form on January 7, 2008, which postponed trial until April 17, 2008, after the IAD mechanical run date. Trial counsel maintained that Appellant told her to request the

continuance, because Appellant believed counsel could obtain additional discovery.

Trial counsel acknowledged her handwritten notation of "no discovery" on the continuance form, but she explained that the Commonwealth had not completely failed to provide discovery. Rather, after reviewing the discovery with Appellant, Appellant did not believe trial counsel had all available items. Regarding the purportedly missing discovery, trial counsel elaborated:

> It was [Appellant's] belief that there were assisting officers that may have additional reports, supplemental reports, interrogation videos that may not have been provided to the Commonwealth, …and that I was searching to make sure on his behalf, at his request, was there any additional information that [the prosecutor] had not provided to me because he did not have it from certain officials that were involved in the arrest regarding these robberies.

(*See* PCRA Hearing at 12.) Consequently, trial counsel filed the motion for a bill of particulars on January 25, 2008.

Upon further questioning from PCRA counsel, trial counsel reiterated that Appellant asked her to execute the continuance form and file the motion for bill of particulars. Further, trial counsel explained:

> The postponements on any criminal case are not in the sole discretion of the defense trial attorney. The postponements are the client's[,] and if a client requested that I put in a postponement because [he] believed I could find something additional, that may assist in…having the charges dismissed, or clients found not guilty, I will surely listen to my client. That's what conferences are for.
>
> There is no reason for me to question a client who…requests that I put in a postponement and seek out any additional information.

- 12 -

(*Id.* at 16).

Regarding the good cause requirement of Article III of the IAD, trial counsel stated that the trial court considered the continuance request in open court. Trial counsel believed Appellant had demonstrated good cause, "or else this postponement would have never been granted by [the trial court]. [The trial court] does not…just sign postponements."[4] (*Id.* at 20). Although the parties rescheduled trial beyond the IAD mechanical run date, trial counsel did not have control over the date:

> The dates are picked between the Assistant District Attorney's calendar, the defense attorney's calendar, and most importantly, the Judge's calendar. So there are three people with three calendars that have to find a date that works for everyone. Most important in my mind, and I will say this always, the Judge's calendar is most important. The Commonwealth…and my calendar are secondary to the [c]ourt's.

(*Id.* at 24). Trial counsel also emphasized that Appellant was aware of the IAD mechanical run date, but he still wanted to pursue a continuance. Appellant also testified at the PCRA hearing and denied many of trial counsel's averments. The PCRA court, however, was free to determine the credibility of both witnesses. *See Abu-Jamal, supra*.

---

[4] Trial counsel discussed her experience in litigating continuance requests with the trial judge, noting the judge "asks for a more detailed reason [other] than what's written on the postponement form of why either side, Commonwealth or defense, needs a postponement." (*Id.* at 21). Additionally, the same jurist presided over Appellant's PCRA proceedings.

Based upon the foregoing, the PCRA court found "there was no ineffectiveness on the part of [trial] counsel and there was [good] cause shown to move the trial beyond the [IAD] mechanical run date of January 29, 2008." (*See* PCRA Court Opinion, filed November 24, 2014, at 4.) Here, trial counsel's testimony provided ample support for the PCRA court's conclusions. *See* 42 Pa.C.S.A. § 9101, Article III. Therefore, Appellant's claim, that counsel was ineffective for failing to challenge the timeliness of trial based upon the IAD, lacks arguable merit. *See Pierce, supra*; *Poplawski, supra*. Accordingly, we affirm the order denying PCRA relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/8/2015