J-S32034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CARA SUTKINS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL MONDELICE | : | |
| | : | |
| Appellant | : | No. 321 MDA 2023 |

Appeal from the Judgment of Sentence Entered February 1, 2023
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2022-CV-07745-AB

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:              **FILED: NOVEMBER 20, 2023**

Appellant Daniel Mondelice appeals from the judgment of sentence[1] imposed after he was found in indirect criminal contempt[2] (ICC) of an order entered pursuant to the Protection from Abuse (PFA) Act.[3]  Appellant claims that the trial court erred by trying him *in absentia*.  We vacate the judgment of sentence and remand for a new trial.

On October 10, 2022, the trial court entered a temporary PFA order on behalf of Cara Sutkins (Complainant) and her two children against Appellant, the father of her children.  The temporary order prohibited Appellant from having any contact with Complainant or the children.  A sheriff's deputy served

_____

[1] It is not clear from the record why this case was not assigned a criminal docket number and caption.

[2] 23 Pa.C.S. § 6114.

[3] 23 Pa.C.S. §§ 6101-6122.

Appellant with the temporary PFA order on October 19, 2022. That same day, the trial court entered an amended temporary PFA order providing Appellant with supervised visitation with his children.

On November 1, 2022, the Susquehanna Township Police Department filed a criminal complaint charging Appellant with ICC and alleging that on October 20, 2022, Appellant contacted Complainant via e-mail in violation of the temporary PFA order. **See** Criminal Compl., MJ-12000-MD-659-2022, 11/1/22.

After Appellant was charged with ICC, the trial court[4] explained:

> [Appellant] was initially scheduled for [a bench trial] on November 16, 2022. However, [Appellant] appeared without counsel and advised [the trial court] that he was seeking a continuance so he could apply for the assistance of court-appointed counsel through the Dauphin County Public Defender's Office. A representative of the Public Defender's Office was present and indicated [Appellant] was told to apply. [Appellant's] next date for [trial] was scheduled by the court for December 7, 2022 at 1:30 pm and he was specifically instructed to appear on that date. On December 7, 2022, neither [Appellant] nor counsel appeared before the court on behalf of [Appellant]. [The trial court then held a bench trial of Appellant *in absentia*.]
>
> After concluding the [trial] and finding [Appellant] guilty of the ICC, the court issued a *capias*[5] for his arrest.

---

[4] The Honorable Jeffrey B. Engle presided over Appellant's trial and sentencing. The Honorable Richard A. Lewis presided over the November 16, 2022 and December 14, 2022 hearings.

[5] "'*Capias*' is Latin for 'that you take' and is the general name for several species of writs that require an officer to take a named defendant into custody." **Commonwealth v. Davis**, 786 A.2d 173, 174 n.1 (Pa. 2001) (citation omitted). During the December 14, 2022 hearing, Senior Judge Lewis referred to Judge Engle's *capias* as a "warrant." N.T., 12/14/22, at 5.

Trial Ct. Op., 3/21/23, at 1-2 (some formatting altered).

One week later, Appellant appeared *pro se* before Senior Judge Lewis on December 14, 2022, although this date was not scheduled, and Appellant was still unrepresented. **See** Appellant's Brief at 8. At the December 14, 2022 hearing, the following exchange occurred:

> [Senior Judge Lewis]: Okay. Anything you wish to say?
>
> [Appellant]: Yes. I don't have legal counsel. I was not really aware that – actually aware that it was today at 1:30. That's why I'm here today. At 1:30, I actually called the PD's office. They even said it was today. But I'm not able to get representation. It was too late. Now I'm working on legal representation. I would really like legal representation, because from the very beginning, even – I know it's not involved. But the PFA shouldn't have even been in effect. I didn't have legal counsel for that. I haven't had a chance –
>
> [Senior Judge Lewis]: What didn't he show up for?
>
> [The Commonwealth]: We had a [bench trial] on December 7th. He picked that date.
>
> [Senior Judge Lewis]: For what?
>
> [The Commonwealth]: For a PFA violation.
>
> [Senior Judge Lewis]: For indirect [criminal contempt]?
>
> [The Commonwealth]: Yes.
>
> [Appellant]: I would like to defend myself in the record with what's being alleged, because my children were involved and I was –
>
> [Senior Judge Lewis]: It's no longer alleged. You were found guilty.
>
> [Appellant]: But I wasn't here to defend myself.
>
> [Senior Judge Lewis]: Because you didn't show up.
>
> [Appellant]: Again, I was trying to get legal counsel. Even the PD's office yesterday told me it was today. I thought it was today.

I agreed upon today. I didn't agree upon the 7th at all. And I would just like the chance to defend myself, because I have a warrant out for my arrest. It's not like I skipped on purpose. I work two jobs –

N.T., 12/14/22, at 4-5.

Appellant stated several more times that he wanted an opportunity to defend himself against the ICC charge. *Id.* at 5, 7, 8-9. Senior Judge Lewis lifted the *capias*, set Appellant's bail at ROR, and informed Appellant that his sentencing hearing was scheduled for December 21, 2022. *Id.* at 6-8; *see also* Trial Ct. Order, 12/14/22.

The trial court held a sentencing hearing on December 21, 2022. The public defender represented Appellant at sentencing. The trial court sentenced Appellant to a term of six months' probation, with the condition that the first month of probation was to be served on house arrest with electronic monitoring. Appellant filed a timely post-sentence motion seeking reconsideration of sentence.

On February 1, 2023, the trial court resentenced Appellant to six months' probation without the house arrest condition. Appellant filed a timely notice of appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue:

Whether the trial court erred in proceeding *in absentia* for an indirect criminal contempt [trial] when [Appellant] was *pro se*, and there was no determination at the time whether the absence was for good cause?

Appellant's Brief at 5.

Appellant argues that he preserved his claim because he objected at the earliest possible time before Senior Judge Lewis, specifically during the December 14, 2022 hearing. *Id.* at 11-12. Appellant notes that during the December 14, 2022 hearing, he explained that he believed that his ICC trial was scheduled for December 14th, not December 7th, 2022. *Id.* at 12. Appellant further contends that he objected to being tried *in absentia* on December 14, 2022 when asked for the opportunity to defend himself. *Id.* (citing N.T., 12/14/22, at 4-5). Appellant further claims that because he was *pro se* at the time, this Court should liberally construe the arguments he made to the trial court protesting his trial and conviction *in absentia*. *Id.* (citing, *inter alia*, **Commonwealth v. Rivera**, 685 A.2d 1011, 1013 (Pa. Super. 1996)).

Appellant argues that the trial court erred by trying him *in absentia* on December 7, 2022, because there was good cause for his absence, and the Commonwealth did not object to continuing the trial. *Id.* at 15-16 (citing **Commonwealth v. Pantano**, 836 A.2d 948, 949-51 (Pa. Super. 2003)). Appellant asserts that his confusion about the trial date and his voluntary appearance in court before Senior Judge Lewis, on December 14, 2022, albeit impromptu, demonstrate that he had good cause for his absence at trial. *Id.* at 16-17. Appellant argues that the trial court failed to determine if Appellant had notice of the trial date, Appellant's whereabouts, or if Appellant was still proceeding *pro se* before proceeding with a trial *in absentia*. *Id.* at 18.

Appellant contends that because he was representing himself at the time, the trial court should have been more accommodating. *Id.*

Both the trial court and the Commonwealth contend that Appellant waived this claim because he did not raise it before the trial court at sentencing. Trial Ct. Op. at 2-3; Commonwealth's Brief at 4.

Before we examine whether Appellant properly preserved his claim, we must address whether Appellant was denied the right to counsel, which we may raise *sua sponte*. **See, e.g.**, **Commonwealth v. Johnson**, 158 A.3d 117, 122 (Pa. Super. 2017) (stating that "it is apparent that this Court has a duty to review whether the [defendant] properly waived his right to counsel prior to his suppression hearing even though [the defendant] has not asserted this issue on appeal"); **Commonwealth v. Akins**, 1356 WDA 2018, 2019 WL 2246260, at *1 & n.3 (Pa. Super. filed May 24, 2019) (unpublished mem.) (addressing *sua sponte* "whether [the defendant's] right to counsel was satisfied" in defendant's trial for ICC).[6]

"As with those accused of any crime, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford." **Commonwealth v. Brumbaugh**, 932 A.2d 108, 110 (Pa. Super. 2007) (citation and quotation marks omitted); **see also Commonwealth v. Ashton**, 824 A.2d 1198, 1203 (Pa. Super. 2003) (explaining that the "the assistance of counsel" is one of the procedural

---

[6] We may cite to non-precedential memorandum decisions filed by this Court after May 1, 2019 for their persuasive value. **See** Pa.R.A.P. 126(b).

safeguards for defendants charged with ICC (citations omitted)).  The PFA Act explicitly provides that a defendant charged with ICC "shall be entitled to counsel."  23 Pa.C.S. § 6114(b)(3).

To waive the right to counsel and proceed *pro se*, a "defendant must demonstrate that he knowingly, voluntarily and intelligently waives his right to counsel."  **Commonwealth v. Brooks**, 104 A.3d 466, 474 (Pa. 2014) (citation omitted); **see also** Pa.R.Crim.P. 121(A)(2).

This Court has explained:

In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it.

Moreover, the presumption must always be against the waiver of a constitutional[7] right.  Nor can waiver be presumed where the record is silent.  The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer.

Thus, for this Court to uphold such a waiver, the record must clearly demonstrate an informed relinquishment of a known right.

---

[7] Although the right to counsel at issue here is statutory in nature, the requirements to waive that right are the same as when a defendant waives the right to counsel guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution. **See, e.g.**, **Akins**, 2019 WL 2246260, at *3; **accord Commonwealth v. Robinson**, 970 A.2d 455, 458 (Pa. Super. 2009) (*en banc*) (concluding that because the PCRA court did not conduct a colloquy pursuant to Rule 121, the record did not establish that the defendant knowingly, voluntarily, and intelligently waived his right to counsel, and explaining although the right to counsel "in the PCRA context is not constitutionally derived, the importance of that right cannot be diminished merely due to its rule-based derivation.").

*Commonwealth v. Phillips*, 93 A.3d 847, 852 (Pa. Super. 2014) (citations omitted and formatting altered).

Where a defendant seeks to waive his right to counsel, the Pennsylvania Rules of Criminal Procedure sets forth the following requirements:

> To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge . . . at a minimum, shall elicit the following information from the defendant:
>
> (a)    that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
>
> (b)    that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
>
> (c)    that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
>
> (d)    that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;
>
> (e)    that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and
>
> (f)    that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2). Rule 121 further requires that, "[w]hen the defendant seeks to waive the right to counsel . . . the judge shall ascertain

from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel." Pa.R.Crim.P. 121(C).

This Court has explained:

Failing to conduct an on the record colloquy pursuant to Rule 121(C) before allowing a defendant to proceed *pro se* constitutes reversible error. . . .

The inherent importance of the right to counsel justifies its overwhelming protection and the rigorous requirements necessary to find waiver.

\* \* \*

A judge's thorough inquiry into the accused's appreciation of both the right to counsel and the right to represent oneself must be used in certain summary proceedings, at trial, guilty plea hearings, sentencing, and every critical stage of a criminal proceeding. A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage.

***Johnson***, 158 A.3d at 121-22 (citations omitted and some formatting altered).

Further, we are mindful that this Court has explained, "[i]t is well established that in Pennsylvania when a defendant fails to appear for trial without cause, he or she may be tried *in absentia*. To try a defendant without counsel, however, is a completely different matter." ***Commonwealth v. Ford***, 715 A.2d 1141, 1143 (Pa. Super. 1998) (citations omitted).

In ***Ford***, the trial court convicted an unrepresented defendant *in absentia*, but this Court observed that there was no evidence in the record that the defendant knowingly waived of his right to counsel prior to trial. ***Id.***

- 9 -

at 1144. This Court drew a distinction between a fugitive forfeiting the right to be present at trial and the right to counsel, concluding that a defendant's failure to appear at trial was "not tantamount to a knowing waiver[]" of his right to counsel and that "[a]n inquisitional trial without counsel, . . . is not a permissible punishment for fugitive status." *Id.* at 1144-45. Therefore, the *Ford* Court vacated the defendant's judgment of sentence and remanded for a new trial. *Id.* at 1146; *see also Akins*, 2019 WL 2246260, at *3 (vacating the judgment of sentence and remanding for a new trial after concluding that the defendant was deprived of his statutory right to counsel at trial because the trial court did not conduct an on-the-record colloquy to confirm that the defendant knowingly, voluntarily, and intelligently waived his right to counsel).

Here, the trial court explained that on November 16, 2022, Appellant appeared *pro se* and requested a continuance of his trial for ICC to obtain counsel. Trial Ct. Op. at 1. The trial court granted Appellant's request for a continuance. *Id.* On December 7, 2022, Appellant failed to appear for trial and counsel did not appear on Appellant's behalf. *Id.* The trial court then proceeded with the trial *in absentia* and convicted Appellant of ICC. *Id.* at 1-2. The trial court also observed that Appellant "apparently did not apply for the assistance of the Public Defender's Office, otherwise counsel would have been present." *Id.* at 2 (footnote omitted).

Based on the record before us, we cannot conclude that Appellant knowingly, intelligently, and voluntarily waived his right to counsel. *See*

- 10 -

***Phillips***, 93 A.3d at 852. The trial court did not conduct an on-the-record colloquy regarding Appellant's waiver of his right to counsel during the November 16, 2022 hearing. While a defendant's failure to appear for trial may result in the forfeiture of his right to be present during trial, the same is not true for the defendant's right to counsel. ***See Ford***, 715 A.2d at 1144-45. Because the record does not indicate that Appellant knowingly, voluntarily, and intelligently waived his right to counsel pursuant to Rule 121, the trial court erred by trying Appellant *in absentia* without counsel to represent Appellant.[8] ***See id.***; ***see also Akins***, 2019 WL 2246260, at *3; Pa.R.Crim.P. 121(A)(2), (C).

For these reasons, we conclude that Appellant was deprived of his statutory right to counsel, and we are constrained to vacate Appellant's judgment of sentence and remand for a new trial.[9]

---

[8] To the extent that the trial court concluded that it could try Appellant *in absentia* without counsel for Appellant because Appellant failed to submit an application to the Public Defender's Office, the failure to apply for a public defender is not a substitute for a knowing, voluntarily, and intelligent waiver of the right to counsel. ***See, e.g.***, ***Commonwealth v. Murphy***, 214 A.3d 675, 679 (Pa. Super. 2019) (concluding that the exchange between the trial court and the defendant where, among others, the defendant acknowledged that he did not hire counsel nor apply for a public defender "fell well short of a colloquy memorializing a knowing and voluntarily waiver of counsel" (citations omitted)).

[9] In light of our disposition, we do not reach Appellant's claim that the trial court erred by trying Appellant *in absentia* because Appellant had good cause for his absence on the day of trial.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/20/2023